UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TERRY RUTLEDGE, | : | Case No. 3:18-cv-268 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Terry Rutledge brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. He applied for benefits on May 20, 2015, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since October 1, 2012. He was fifty-three years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 416.963(d). He has a high school education. *See* 20 C.F.R. § 416.964(b)(4).

Plaintiff testified at the hearing before ALJ Hockensmith that his ankles swell almost every night and hurt. (Doc. #6, *PageID* #s 71, 75). If he is on his feet too long, his feet and ankles swell during the day. *Id.* at 76. He generally spends sixty to seventy percent of his time during the day lying down or elevating his feet. *Id.* Plaintiff falls because his ankle rolls in and his foot twists. *Id*. at 74. In a one-month period, he fell fifteen to twenty times. *Id.* at 74. His doctor prescribed a cane, and he has braces permanently inside his shoes. *Id.* at 74-75.

Plaintiff has arthritis in his neck. *Id.* at 74. He also has problems with his back. *Id.* at 71. He has a sharp pain that goes down through his back and up under his shoulder blade. *Id.* at 74. He has trouble turning certain ways and is sometimes unable to get up and out of bed. *Id.* at 71. If he tries to lift heavy items, it bothers his lower back. He guessed that he could lift twenty-five pounds. *Id.* at 74, 77. But he also testified that it is "kind of hard" to lift a gallon of milk. *Id.* at 71. Sometimes when he tries to pick up a gallon, pain shoots up his arm and he feels like he will drop it. *Id.* at 77.

2

He has arthritis in his hands and they hurt. *Id.* at 71. He has braces for his wrists that he is supposed to wear at night. *Id*. If his hands start hurting, he wears the braces during the day. *Id*. The night before the hearing, he fell asleep without them. His wrist swelled up and hurt. *Id*. Sometimes Plaintiff cannot pick anything up; "When they [are] like this, I can't feel nothing. That's why they [are] red." *Id.*

Plaintiff had a heart attack and was in the hospital for three days. *Id.* at 76. He still has chest pain. When he has chest pain, his doctor told him to take nitroglycerine, lie down, relax, and do nothing. *Id.* at 75. He estimated that he takes one nitroglycerine a week. *Id.* at 76.

Plaintiff has diabetes mellitus. He takes a shot with each meal and a 24-hour shot. *Id.* at 71. He struggles with his blood sugar: "I take home shots when I wake up in the morning. My blood sugar might be like 180/190. If I eat something, it goes to 389, and I can take that shot, but it still ain't going to come down to about 350 something." *Id.* at 77. When his blood sugar is that high, his head hurts and he gets dizzy. *Id*. He takes gabapentin for neuropathy. *Id.* at 75.

Plaintiff found out that he had cataracts when he was driving at night in the rain and he almost went off the road because lights blinded him. *Id.* at 72. His vision was so bad that he could not pass the vision test to get his license. *Id.* at 73. Plaintiff had cataract surgery in 2014 and he "can see pretty good." *Id.* at 74. He has a "light prescription." *Id.* at 74

At the time of the hearing, Plaintiff had lived with his mother for two years, since she had back surgery. *Id.* at 70. He is not able to do much around the house because he

3

knows he will fall. *Id.* at 75. He might wash dishes or something like that. *Id.* at 75. His son comes over to cut the grass and take out the trash. *Id.* at 75. Plaintiff is able to drive but does not when he takes his medications (because they make him drowsy) or when he is in pain. *Id.* at 71. Plaintiff's pain keeps him from leaving the house about two times a week. *Id.* at 77.

### III. <u>Standard of Review</u>

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

4

2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

    Step 1:    Plaintiff has not engaged in substantial gainful employment since May 20, 2015.

5

| | | |
|---|---|---|
| Step 2: | | He has the severe impairments of diabetes mellitus, hypertension, osteoarthritis of the hands and lower extremities, peripheral vascular disease, mild lumbar spondylosis, and cervical strain. |
| Step 3: | | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work … except (1) no ladders, ropes, or scaffolds; (2) frequent climbing of ramps and stairs; (3) frequent balancing, stooping, kneeling, crouching, and crawling; (4) no work at unprotected heights or around dangerous machinery; (5) frequent use of foot controls; (6) frequent handling, bilaterally; (7) frequent overhead reach, bilaterally." |
| Step 4: | | He is capable of performing his past relevant work as a coating helper. |
| Step 5: | | He could also perform a significant number of jobs that exist in the national economy. |

(Doc. #6, *PageID* #s 40-48). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 48.

## V. <u>Discussion</u>

Plaintiff contends that the ALJ improperly assumed the role of medical expert and thus, substantial evidence does not support his residual functional capacity assessment (RFC). The Commissioner disagrees.

There is no doubt that "the administrate law judge … is responsible for assessing [a claimant's] residual functional capacity." 20 C.F.R. § 416.946(c). But the Social Security Administration requires the ALJ to provide some explanation and support: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

6

nonmedical evidence (e.g., daily activities, observations)…." Soc. Sec. R. 96-8P, 1996 WL 374184, *7 (July 2, 1996) (footnote omitted). Importantly, "In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008) (citing 20 C.F.R. §§ 416.913 and 416.945(a)(3)). Indeed, "this Court has stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Mabra v. Comm'r of Soc. Sec.*, No. 2:11-CV-00407, 2012 WL 2319245, at *8 (S.D. Ohio June 19, 2012), *report and recommendation adopted*, No. 2:11-CV-00407, 2012 WL 3600127 (S.D. Ohio Aug. 21, 2012) (citing *See Isaacs v. Astrue,* No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D.Ohio Nov.4, 2009)).

In the present case, as Plaintiff correctly observed, "no medical opinion of any kind supports ALJ Hockensmith's determination that Plaintiff maintains an ability to perform the reduced range of medium exertion work described in the ALJ's residual functional capacity assessment." (Doc. #7, *PageID* #1139). There are only a few medical opinions in the record; ALJ Hockensmith did not find them persuasive. The State agency physicians, Dr. Sutherland and Dr. Villanueva, opined that Plaintiff had no severe impairments and two non-severe impairments—diabetes mellitus and essential hypertension. (Doc. #6, *PageID* #s 127, 135). The ALJ assigned their opinions "little weight," explaining that "additional evidence later added to the file suggests severe

impairments with some limitations."[2] *Id.* at 46. The ALJ also assigned "little weight" to the opinions of the consultative examiners, Dr. Kessler and Dr. Oza. Dr. Kessler completed an ophthalmological exam in August 2013, before Plaintiff's corrective eye surgery in 2014. *Id.* at 439-43. Dr. Oza likewise evaluated Plaintiff before his surgery. However, her examination extended outside Plaintiff's vision. She opined that if his cataracts were corrected, "then he should be started on right medication and should be able to perform some work-related activities down the road." *Id.* at 438. The ALJ overlooked or ignored that part of her opinion.

Instead of relying on medical opinions, ALJ Hockensmith impermissibly relied on his own interpretation of raw medical data. The ALJ, for example, acknowledged that Plaintiff has mild spondylosis (as shown by lumbar x-rays) and a cervical strain (since he was in a car accident in September 2016). *Id.* at 46 (citing 21F/53, 67).[3] However, the ALJ discounted those findings: "Objective examination revealed [Plaintiff] has normal range of motion in his neck despite a history of tenderness. [He] was noted to have 'good' range of motion and full motor strength in all extremities despite his neck strain." *Id.* at 46 (citing 21F/51; 22F/8, 56).

---

[2] The record contains additional opinions from three State agency examiners (who reviewed Plaintiff's records in connection with his previous applications for benefits.). All three agreed that Plaintiff had severe impairments. Dr. Villanueva (in September 2013) and Dr. Hinzman (in December 2013) found Plaintiff had three severe impairments—essential hypertension, diabetes mellitus, and loss of central visual acuity. (Doc. #6, *PageID* #s 90, 103). Dr. Richardson (in November 2014) agreed with the first two impairments but found that Plaintiff also has a substance-addiction disorder. *Id.* at 116. By the time he reviewed the records, Plaintiff had corrective eye surgery and was able to see.
[3] The ALJ mistakenly cites 21F/53; the information he refers to is on 21F/52.

8

Substantial evidence does not support the ALJ's finding. Notably, the ALJ included five citations to specific pages in the record but four of the five cites all come from the same date—September 25, 2016, when Plaintiff was in a car accident. The ALJ overlooks or ignores significant objective findings. For instance, the ALJ noted that Plaintiff was diagnosed with cervical sprain. However, the ALJ overlooked a CT of Plaintiff's cervical spine that revealed "moderate to severe multilevel degenerative change. *Id.* at 982.

The ALJ noted that although Plaintiff reports pain in his foot tendon, he did not have pain on full range of motion; weight-bearing examination revealed no gross deformities, and he was able to perform single limb heel raise test. *Id.* at 46 (citations omitted). Further, "[Plaintiff] was prescribed a cane at the end of 2016 after his self-reported 'balance issues' [caused] him to fall, and difficulty with prolonged walking, despite objective notes documenting normal gait and station." *Id.* (citations omitted).

But, the ALJ does not discuss notes from Plaintiff's podiatrist, Belinda Chan, DPM, that indicate Plaintiff is "unable to perform prolonged exercise or walking." *Id.* at 1112, 1114, 1117. In November 2016, she noted Plaintiff's muscle strength was 3/5 for all groups tested to the right ankle. Further, at the same appointment that she prescribed the cane, she explained, "There is noted tenderness to palpation directly over the ATFL ligament. ROM is also painful to plantar flexion and inversion of the foot…." *Id.* at 1116.

Similarly, the ALJ found "Objective neurological examination consistently reveals normal sensation to light touch." *Id.* at 46 (citations omitted). But in December 2016 Dr.

Chan noted, "absent posterior tibial pulse, decreased or absence of hair growth, discoloration of skin, paresthesia, temperature changes, thickening of nails and thin or shiny skin." *Id.* at 1117.

ALJ Hockensmith concludes that his RFC assessment "is supported by the overall objective evidence of record." *Id.* at 46. However, in evaluating the medical records, the ALJ impermissibly relied on his own interpretation of raw medical data.

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself.

*Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (quoting *Rohrberg v. Apfel*, 26 F. Supp. 2d 303 (D. Mass. 1998) (quotation marks omitted)). Because ALJ Hockensmith improperly interpreted raw medical data, substantial evidence does not support his residual functional capacity assessment.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenge to the ALJ's decision is unwarranted.

10

provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

determine anew whether Plaintiff was under a disability and whether his application for Supplemental Security Income should be granted.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Terry Rutledge was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.


August 20, 2019                                   *s/Sharon L. Ovington*
                                                  Sharon L. Ovington
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).